UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
    10-CR-90S (2)

IAN CAMPBELL GENT,

                Defendant.

## I. INTRODUCTION

On December 27, 2012, this Court sentenced Defendant Ian Campbell Gent to, *inter alia*, eight years of imprisonment after he was convicted by a jury on February 23, 2011, of mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349. (Docket No. 196.)

Gent appealed to the United States Court of Appeals for the Second Circuit, which affirmed his convictions but vacated and remanded his sentence for this Court to determine (1) whether this case presents unusual circumstances warranting the inclusion in Gent's relevant-conduct calculation of criminal conduct committed before he joined the conspiracy, and if not, (2) what date Gent joined the conspiracy. See Gane v. United States, 592 Fed.Appx. 4, 7 (2d Cir. 2014).

After entry of the Mandate (Docket No. 272), this Court conferred with counsel for the parties, who agreed that the remand issues did not require a hearing. (Docket No. 277, 284.) Instead, this Court accepted the parties' full briefing[1] on the remand issues and took

---

[1]The parties' submissions addressing the remand issues are filed at Docket Numbers 278, 279, 280, and 281.

1

the matter under advisement. Upon review of the trial transcripts and record in this case, this Court now finds that (1) this case does not present unusual circumstances, and (2) Gent joined the conspiracy on March 12, 2007.

## II. BACKGROUND[2]

Gent and others were involved in a scheme to sell debentures under the names Watermark Financial Services Group and Watermark M-One Holdings, Inc. Beginning in January 2006, commissioned sales staff offered investment opportunities in one- or two-year debentures that promised 10% annual interest. Among other things, investors were told that their investments would fund real estate development in Maine and a health insurance network for religious institutions. What individuals were not told was that the "convertible debentures" they were purchasing were unsecured loans to the Watermark entities which, before the due date for repayment, could be converted into shares of common stock in the company. Individuals who testified at trial explained that, based on representations made to them, they believed that they were making a safe, guaranteed investment with little to no risk. Between January 2006 and May 2008, the scheme realized $6,758,027, but only $241,000 was actually invested, and only $545,064 in principal and interest was returned to investors.

---

[2]Only those facts necessary to resolve the remand issues are presented here. A fuller factual discussion, complete with citations to the trial transcript and evidence, is contained in this Court's previous decision resolving the defendants' post-trial motions. See United States v. Gent, No. 10-CR-90S, 2012 WL 1899159 (W.D.N.Y. May 23, 2012).

2

## III. DISCUSSION

**A. This Case Does Not Present Unusual Circumstances Warranting the Inclusion in Gent's Relevant-Conduct Calculation of Criminal Conduct Committed Before He Joined the Conspiracy.**

Relevant conduct is determined under § 1B1.3 of the United States Sentencing Guidelines. Application Note 2 to § 1B1.3 provides, in pertinent part, as follows:

> A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level). The Commission does not foreclose the possibility that there may be some unusual set of circumstances in which the exclusion of such conduct may not adequately reflect the defendant's culpability; in such a case, an upward departure may be warranted.

Here, it is undisputed that Gent joined the conspiracy after it began. The question on remand is whether this case presents unusual circumstances requiring that all conduct attributable to the conspiracy—even conduct predating Gent's joinder—be included as relevant conduct to adequately reflect Gent's criminal culpability.[3]

The government argues that all conduct attributable to the conspiracy should be attributed to Gent. It contends that the nature of this scheme is unusual in that original debentures sold before Gent joined the conspiracy were "rolled over" after Gent joined. That is, once the original debentures became due one or two years after sale, investors were encouraged to "roll over" their investments into new debentures to avoid Watermark

---

[3]The probation officer determined that Gent was responsible for a total loss of $6,396,359.37 involving at least 94 victims. See PreSentence Investigation Report, Docket No. 201, ¶¶ 74, 75.

having to pay its obligations. Gent maintains that there is nothing unusual about the roll over process and any misrepresentations made at the time of roll over would be separate and apart from any misrepresentations made at the time of the initial sale. Thus, the initial sales, which pre-date Gent joining the conspiracy, do not present unusual circumstances as contemplated in the Application Note.

In this Court's view, consideration of conduct that pre-dates Gent joining the conspiracy is not necessary to adequately reflect Gent's criminal culpability. Gent was not part of the conspiracy when debentures were initially sold to investors through fraud and misrepresentation, and there is nothing unusual about this case that would warrant holding Gent responsible for that conduct. Gent remains, however, responsible for any "roll overs" induced by fraud and misrepresentation after he joined the conspiracy, a point which he appears to concede. See Docket No. 281 (noting that "[a] misrepresentation to an investor making an initial debenture purchase would not stand on significantly different legal footing than one to a purchaser rolling one over") Accordingly, this Court finds an absence of unusual circumstances that would warrant attributing all conduct of the conspiracy to Gent for relevant conduct purposes. See U.S.S.G. § 1B1.3, Application Note 2. Gent's relevant conduct therefore includes only conduct that occurred on or after the date he joined the conspiracy.

**B.     Gent Joined the Conspiracy on March 12, 2007.**

The Second Circuit remand requires this Court to determine "the date on which Gent joined the conspiracy." Gane, 592 Fed.Appx. at 7. Gent maintains that he joined the conspiracy, at the earliest, on December 4, 2007, when he participated in a meeting with St. Albert's church. Gent deems this date the most reasonable entry point because, in his

4

view, the government narrowed its theory of prosecution on appeal to misrepresentations made to investors. The government maintains that this Court already determined the date Gent joined the conspiracy when it resolved his post-trial motions. See Gent, 2012 WL 1899159, at *5, *7-*8 (discussing Gent's involvement with Gane and Watermark in early 2007). It also takes issue with Gent's assertion that the government narrowed its theory or the Second Circuit narrowed the scope of the conspiracy to focus exclusively on misrepresentations to investors.

Having reviewed the parties' arguments and the record evidence, this Court identifies March 12, 2007, as the date Gent joined the conspiracy for purposes of determining his relevant conduct, including loss and victim calculations. As this Court discussed in its previous Decision and Order, Gent's involvement with Gane pre-dated his employment at Watermark, which began, according to Gane, in the "middle of March . . . of 2007." (Docket No. 164 at 103.) Gane testified that he spoke to Gent about the debentures in January or February 2007, when they also discussed Gent joining Watermark as a consultant. (Id. at 99–101.) Gane revealed to Gent that he needed to do something to prevent having to pay old investors with new investors' money, and Gent recommended "re-papering" the company. (Id. at 101.)

Gane further testified that when Gent "came on board," he was aware that none of the investors' money had been invested, because he alerted co-conspirator James Lagona to that fact. (Id. at 96.) This evidence is significant because it put Gent on notice that Gane and his sales team misrepresented what would become of investors' funds, since the funds were not being invested in anything at all. Gane also testified that he met with Gent and Lagona to discuss the problem of paying old investors with new investors' money

5

"shortly after" hiring Gent, further demonstrating that investor funds were not being used as originally represented to the investors. (Id. at 108.) Gane further testified that he expressed his concern over the situation to Gent and Lagona and suggested that they contact government financial regulators (e.g., SEC, NASD), to which Gent and Lagona "almost jumped out of their seats and told me I was crazy." (Id. at 109.) Gent told Gane that there were different ways to fix the problem than to go to the authorities. (Id.)

Citing this evidence, this Court previously concluded that "the trial record contains sufficient evidence to support a jury finding that Gent entered into the conspiracy to defraud prior to March 2007." See Gent, 2012 WL 1899159, at *7. But for purposes of determining a date certain that Gent joined the conspiracy for relevant conduct purposes, this Court identifies March 12, 2007, which is consistent with Gane's testimony that Gent began with Watermark in the middle of March 2007 and with the Second Circuit's decision affirming Gent's mail fraud convictions, the earliest of which occurred on March 22, 2007.

This Court finds no merit in Gent's position that the government or Second Circuit narrowed the scope of the conspiracy to only misrepresentations made to investors. This position finds no support in the Second Circuit's decision, which does not discuss any concessions by the government or narrowing of the scope of the conspiracy, nor is it consistent with the Second Circuit's affirmance of Gent's mail fraud convictions, as discussed above.

Accordingly, for the reasons stated above, this Court finds that Gent joined the conspiracy on March 12, 2007.

## IV. CONCLUSION

The Second Circuit vacated Gent's sentence. He must therefore be resentenced in accordance with the Second Circuit's Mandate and this Decision and Order.[4] The United States Probation Office will be directed to prepare a Revised PreSentence Report consistent with this Decision and Order, to include any loss or number-of-victim adjustments required by this Court's findings that (1) this case does not present unusual circumstances, and (2) Gent joined the conspiracy in March 12, 2007. The Probation Office shall also compute a revised restitution figure.[5] A schedule for sentencing submissions will be issued by separate order.

## V. ORDERS

IT HEREBY IS ORDERED, that the United States Probation Office prepare a Revised PreSentence Report consistent with this Decision and Order, to include any loss or number-of-victim adjustments required by this Court's findings that (1) this case does not present unusual circumstances, and (2) Gent joined the conspiracy on March 12, 2007. The Probation Office shall also compute a revised restitution figure.

FURTHER, that the status conference scheduled before this Court for September 2, 2015, is CANCELED.

---

[4] In his sur-reply, Gent expresses concern that his sentencing exposure may be greater than the eight years imprisonment originally imposed, because the government has requested that a sentence within the significantly higher advisory guidelines be imposed on resentencing. The parties are hereby advised that Gent will not be resentenced to more than his original term of imprisonment.

[5] This Court rejects the government's inequitable position that a reduced loss figure should not result in a reduced restitution order on the basis that the Second Circuit did not specifically direct that restitution be revisited on remand. Given the close relationship between loss and restitution, this Court deems a revised restitution order to fall squarely within the scope of the Mandate.

FURTHER, that this Court will issue a separate order with a schedule for sentencing submissions and a date for resentencing.

SO ORDERED.


Dated: August 27, 2015
       Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge