UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IAN CAMPBELL GENT,

                          Petitioner,

        v.                                          **DECISION AND ORDER**
                                                    17-CV-269S
UNITED STATES OF AMERICA,                           10-CR-90S (2)

                          Respondent.

# I. INTRODUCTION

Presently before this Court are pro se petitioner Ian Campbell Gent's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 and other related motions.  (Docket Nos. 314, 321, 326, 327.[1])  For the reasons discussed below, Gent's motions are denied.

# II. BACKGROUND

On February 23, 2011, after an 11-day trial, a jury returned a guilty verdict against Defendant Ian Campbell Gent on counts 5 through 27 of a 27-count redacted indictment, which charged violations of 18 U.S.C. §§ 2, 1341 (mail fraud and aiding and abetting mail fraud) and 18 U.S.C. § 1349 (conspiracy to commit mail fraud).

Gent and others were involved in a scheme to sell debentures under the names Watermark Financial Services Group and Watermark M-One Holdings, Inc.  Beginning in January 2006, commissioned sales staff offered investment opportunities in one- or two-year debentures that promised 10% annual interest.  Among other representations,

---

[1] All docket citations are to the criminal case: 10-CR-90S (2).

investors were told that their investments would fund real estate development in Maine and a health insurance network for religious institutions. What individuals were not told, however, was that the "convertible debentures" they were purchasing were unsecured loans to the Watermark entities which, before the due date for repayment, could be converted into shares of common stock in the company. Individuals who testified at trial explained that, based on representations made to them, they believed they were making a safe, guaranteed investment with little to no risk. Between January 2006 and May 2008, this scheme realized $6,758,027, but only $241,000 was actually invested, and only $545,064 in principal and interest was returned to investors.[1]

On December 27, 2012, this Court sentenced Gent to 8 years' imprisonment and 3 years' supervised release on each count, to run concurrently. (Docket No. 196.) Gent timely appealed to the United States Court of Appeals for the Second Circuit, which, on October 24, 2014, affirmed his conviction but vacated his sentence. See Gane v. United States, 592 Fed.Appx. 4 (2d Cir. 2014). The Second Circuit rejected Gent's arguments that (1) there was insufficient evidence presented at trial that he knew about the scheme or intended to defraud, (2) there was an unacceptable risk that speculative legal theories led to his convictions; (3) this Court admitted impermissible hearsay evidence, and (4) this Court erroneously instructed the jury. See id. at *5. The Second Circuit was persuaded, however, that vacatur of Gent's sentencing and remand was necessary due to the miscalculation of loss. See id. at *7. It therefore affirmed in part, vacated in part, and remanded for re-sentencing. Id. Gent did not seek further review by the United

---

[1] A broader factual discussion, complete with citations to the trial transcript and evidence, is contained in this Court's decision resolving Gent's post-trial motions. See United States v. Gent, No. 10-CR-90S, 2012 WL 1899159 (W.D.N.Y. May 23, 2012).

States Supreme Court. (Docket No. 314, p. 14.)

On remand, this Court properly determined loss (<u>see</u> Docket No. 285) and re-sentenced Gent to 6 years' imprisonment and 3 years' supervised release on each count, to run concurrently (Docket No. 297). Just less than one year later, on March 28, 2017, Gent timely filed the instant § 2255 motion,[2] to which the government responded. (Docket Nos. 314, 325.) He later filed a motion for transcripts and other documents (Docket No. 321), as well as motions to proceed *in forma pauperis*[3] (Docket No. 326) and for an evidentiary hearing (Docket No. 327).

## III. DISCUSSION

### A. § 2255 Proceedings

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences. That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting <u>Reed v. Farley</u>, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277

---

[2] A 1-year statute of limitations applies to § 2255 petitions. <u>See</u> 28 U.S.C. § 2255 (f).

[3] Because there are no fees associated with the filing of a § 2255 motion, and because Gent's § 2255 motion will be denied, leave to proceed *in forma pauperis* is not required. Gent's motion is therefore denied.

(1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010)    First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001).  This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate.  See id. at 53-54 (citations omitted).  An exception to this rule exists for cases involving intervening changes in the

law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal. See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. See Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[4] Id. The party requesting discovery

---

[4] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. <u>See</u> Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. <u>See</u> <u>Puglisi v. United States</u>, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; <u>see, e.g.</u>, <u>Pham v. United States</u>, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." <u>Machibroda v. United States</u>, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); <u>see, e.g.</u>, <u>Chang v. United States</u>, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. <u>See, e.g.</u>, <u>Machibroda</u>, 368 U.S at 494, 82 S. Ct. 510; <u>United States v. Aiello</u>, 814 F.2d 109, 113-14 (2d Cir. 1987).

<u>Gonzalez v. United States</u>, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

## B.     Gent's Claims

Construing Gent's submissions liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that his claims fall into two categories: (1) claims challenging the sufficiency of the evidence (Docket No. 314, ¶¶ 12-20, 22); and (2) claims alleging ineffective assistance of trial and appellate counsel. (Id. at ¶ 21.) These claims are addressed below.

### 1.   Gent's sufficiency-of-the-evidence claims are barred by the mandate and procedural-default rules.

Gent devotes a great deal of his § 2255 motion to challenging the sufficiency of the trial evidence and the affirmance by the Second Circuit, which he calls "the misinformed Appeal Court." (See, e.g., Docket No. 314, ¶¶ 13, 14.) He claims that the Second Circuit wrongly determined that there was sufficient proof of his criminal intent (id.), that the government's "solicitation story" was wrong (id. at ¶ 15), that the government presented a "false Ponzi theory" (id. at ¶¶ 16, 17), that the government purposefully misstated Watermark's corporate financing (id. at ¶ 18), that the government failed to prove Gent's fiduciary duty and affiliation with Watermark (id. at ¶ 20); and that the government selectively prosecuted him because he is a Canadian citizen (id. at ¶ 22).[5]

Each of these arguments attacks the sufficiency of the trial evidence or trial

---

[5] These claims are repeated with some elaboration on pages 16, 17, and 20 of Gent's motion. (Docket No. 314.)

proceedings, which the Second Circuit has already found were sufficient to support Gent's convictions.[6]  In particular, the Second Circuit found as follows:

> The trial evidence was sufficient to allow a rational jury to conclude that Gent and Lagona had intent to defraud and knowledge of Watermark's illegal scheme.  Specifically, Lagona actively prepared new debentures even after becoming aware that payments to investors of previously issued debentures were due and could not be paid, as promised, with profit; attended at least one sales meeting in which he participated in procuring an investment based on false representations; signed letters assuring investors that their non-existent investments were safe; and did these things at times when he was aware that no investments and no income were being generated.
>
> When he was hired, Gent knew that the company was "bleeding money" and was paying new investors back with prior investor money.  As Gent argues, these conditions do not necessarily bespeak fraud; however, while he was encouraging the sales team to continue selling debentures, he told an employee that he had received permission for the sales from a FINRA representative—which the representative denied at trial.  Gent and Lagona were also present at a meeting in which an employee was instructed to take records home in order to conceal them from FINRA or SEC officials; and Gent implicitly acknowledged the potential legal consequences.  This evidence is sufficient to allow a reasonable jury to infer that Lagona and Gent intended to defraud investors and had knowledge of the scheme.

Gane, 592 Fed.Appx. at *6.

It further rejected Gent's arguments that the government's references to a Ponzi scheme were improper:

> The defendants argue that the government referenced Ponzi schemes and unregistered securities to suggest illegality outside of the indictment.  However, Ponzi schemes were referenced to show that the victims were never informed that their money would be used to pay other investors, which supported the theory that Gent and Lagona intended to

---

[6] As noted, Gent did not seek review of the Second Circuit's decision by the United States Supreme Court. (Docket No. 314, p. 14.)

> engage in a fraudulent scheme. Evidence that Gent and Lagona believed that the debentures sold by Watermark should have been registered, but decided to sell them anyway, was also probative of fraudulent intent. In any event, even if undefined legal theories were thus referenced, they did not affect the fairness or integrity of the trial.

Id. at *6.

In short, the Second Circuit has determined that the trial evidence was sufficient to support Gent's convictions, and it otherwise found no error in the trial proceedings. The mandate rule therefore bars Gent from now re-litigating the sufficiency of the trial evidence: it is well established that a § 2255 motion cannot be used to re-litigate issues previously raised and resolved on direct appeal. See Yick Man Mui, 614 F.3d at 53 ("a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal") (citation and internal quotation marks omitted)).

And even if Gent's § 2255 arguments vary slightly from those raised in his direct appeal, they are nevertheless barred because the mandate rule also bars the re-litigation of issues "impliedly resolved by the appellate court's mandate." Id. at 53 (citation omitted).

Finally, to the extent that any of Gent's sufficiency-of-the-evidence arguments were not raised on direct appeal, they are procedurally defaulted because Gent has failed to demonstrate cause for failing to raise any such arguments on direct review and actual "prejudice" or actual innocence. See Marone, 10 F.3d at 67 ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.")

Consequently, Gent's sufficiency-of-the-evidence claims are barred by the mandate and procedural-default rules.

## 2. Gent's ineffective-assistance-of-counsel claims fail.

Gent maintains that both his trial and appellate counsel were ineffective. He claims that his trial counsel failed to investigate, prepare for trial, and present a defense; was not qualified to defend a securities case; misled him to believe that accepting a plea to a misprision of felony was a felony conviction that could lead to deportation; and refused to allow him to testify before the grand jury. (Docket No. 314, ¶ 21.) He further claims that his appellate counsel was not qualified to handle a securities case and failed to consult a securities expert.[7] (Id.)

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend VI. It is well established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Gent's ineffective-assistance-of-counsel claims may be brought in this collateral proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct appeal.[8] See Massaro, 538 U.S. at 508-09. To succeed on his ineffective-assistance-of-counsel claims and secure reversal of his conviction on the ground of inadequate legal representation, Gent must satisfy both prongs of the two-part

---

[7] These claims are repeated on pages 18 and 19 of Gent's motion. (Docket No. 314.)

[8] As noted above, however, the mandate rule still applies. That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred. See Yick Man Mui, 614 F.3d at 53-54 (citations omitted). Here, the Second Circuit did not address any ineffective-assistance-of-counsel claims on direct review. See Gane v. United States, 592 Fed.Appx. 4 (2d Cir. 2014).

test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced the defendant."[9] 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Petitioner must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance." Id. at 688, 690. Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689). This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689 (internal citation omitted). The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, Gent must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally

---

[9] Although Strickland addressed ineffective assistance of trial counsel, the Second Circuit has adopted the same test for assessing the effectiveness of appellate counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) (citing Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990)).

"requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Each of Gent's ineffective-assistance-of-counsel claims fails to meet the Strickland test.

Gent first claims that trial counsel was ineffective because "no defense side of the alleged case was presented by court appointed counsel . . . They did not want to hear it was not a Ponzi." (Docket No. 314, ¶ 21.) This claim fails for a number of reasons. First, as a factual matter, Gent's trial counsel did in fact present a defense (lack of intent, principally) and vigorously litigated that defense throughout trial. Second, Gent offers no details concerning this generic claim, nor does he explain how trial counsel specifically failed to present a defense. See Castellano v. United States, 795 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) (citing Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (rejecting bald assertion of counsel's deficiency as too conclusory to overcome the Strickland presumption that counsel acted reasonably)). Third, in suggesting that trial

counsel "did not want to hear it was not a Ponzi" (Docket No. 314, ¶ 21), Gent impermissibly seeks to re-litigate his rejected Ponzi arguments by repackaging them as an ineffective-assistance-of-counsel claim. See Batista v. United States, 14-CV-895 (DLI), 2018 WL 1556880, at *5 (E.D.N.Y. Mar. 30, 2018) (finding "no reason to address the identical substantive arguments already considered and rejected . . . simply because Petitioner now relabels them as ineffective assistance claims" in a "thinly veiled" attempt to re-litigate previously decided issues). Finally, Gent does not show how trial counsel's handling of the Ponzi arguments in the context of presenting a defense amounted to "incompetence under prevailing professional norms" or how the handling of that evidence prejudiced him. Harrington, 562 U.S. at 105.

Second, Gent claims that both trial and appellate counsel were ineffective because "it appears that neither" was "qualified or experienced to defend a White-Collar Securitas Case of Ponzi" and should have sought the assistance of securities experts. (Docket No. 314, ¶ 21.) Again, Gent offers no facts to support his claim that neither attorney was qualified to represent him. But in any event, Gent's claim fails because criminal defendants are not entitled to specialized or expert counsel; they are entitled to reasonably competent counsel. See Premo v. Moore, 562 U.S. 115, 126, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011). Both trial and appellate counsel are experienced, highly-skilled members of the bar, and Gent offers no facts to support his contention that they lacked suitable experience or qualification to represent him in this case. He therefore fails to rebut the presumption of competence that attaches to his counsel. See United States v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ("we presume that the lawyer is competent to provide the guiding hand that the defendant needs") (citing

<u>Michel v. Louisiana</u>, 350 U.S. 91, 100-101, 76 S. Ct. 158, 163-64, 100 L. Ed. 83 (1955)).

Third, Gent claims that trial counsel was ineffective because there was "[i]nitial representation error in the Target Letter proffer session regarding damning statements obtained illegally by Civil case lawyer under the direction of AUSA Buffalo."[10]  (Docket No. 314, ¶ 21.)  This is again a conclusory claim that Gent does not detail.  Gent does not explain what objectionable action trial counsel took, nor does he show how that action was deficient or prejudiced him.  Gent therefore wholly fails to meet his burden under <u>Strickland</u>.  <u>See</u> <u>Harrington</u>, 562 U.S. at 104 (explaining that, under <u>Strickland</u>, a petitioner must "show both that his counsel provided deficient assistance and that there was prejudice as a result").

Fourth, Gent claims that trial counsel was ineffective because he misled him to believe that a plea to misprision of felony was a felony conviction that could lead to deportation, when in fact misprision of felony is a misdemeanor.  (Docket No. 314, ¶ 21.)  Gent is simply incorrect in his belief that misprision of felony is a misdemeanor.  Misprision of felony is punishable by imprisonment of "not more than three years" under 18 U.S.C. § 4, which makes it a felony.  <u>See</u> *Felony*, Black's Law Dictionary (9th ed. 2009) (defining felony as "[a] serious crime [usually] punishable by imprisonment for more than one year or by death").

Fifth, Gent challenges a variety of trial counsel's strategic decisions.  He claims that trial counsel (1) refused to let him testify before the grand jury to "correct[] the record re not CFO and did not say Ok to sell and other Indictment errors of facts"  (Docket No.

---

[10] Gent also claims that the "unlitigated civil case [was] factually and legally incorrect."  (Docket No. 314, ¶ 11 ("The SEC was not entitled to a uncontested summary judgment.").  This claim is not cognizable in a § 2255 proceeding because it does not challenge Gent's criminal judgment.

314, ¶ 21), (2) failed to file motions to correct court decisions and failed to request certain documents at trial (Docket No. 325, pp. 2, 3 and Appendix), (3) failed to "talk to list of potential witness or call any Advisors or securities principal witnesses to explain and correct SEC and corporate financing start procedure misstatements and false assumptions" (Docket No. 314, ¶ 21), and (4) failed to accept his views of the case, such as legal issues concerning registered securities and "[i]gnoring Defendant protests that Govt case is a false media crime to cover up destruction of all Watermark companies." (Docket No. 314, ¶ 21.)

A court reviewing counsel's performance is "not permitted to use hindsight to second guess [counsel's] strategy choices." Baran v. United States, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). And "the decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005). "[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." Id. Moreover, counsel is not obligated to call every witness and pursue every issue or defense. See United States v. FNU LNU, Nos. 06-CR-172-LTS, 13-CV-3507-LTS, 2015 WL 5178438, at *5 (S.D.N.Y. Sept. 4, 2015) ("Counsel's alleged decision not to call certain witnesses and investigate certain defenses . . . are afforded a presumption of reasonableness, which Petitioner's generalized assertions are insufficient to overcome."); Gilliam v. Artus, 653 F. Supp. 2d 315, 332-33 (W.D.N.Y. 2009) ("Although trial counsel has a duty to consult with a client regarding 'important decisions' . . . that obligation does not require counsel to obtain the defendant's consent to 'every tactical

decision.'") Nor is counsel required to assert frivolous or meritless arguments. See Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) ("It is well established that the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which a defendant is entitled." (quotations, citations, and alterations omitted)).

Here, Gent's trial-strategy claims fail to overcome the presumption of effectiveness attached to an attorney's performance. See Strickland, 466 U.S. at 689. There are myriad reasons why a lawyer would not want his client to testify before a grand jury or may eschew calling certain witnesses. An attorney might also quite properly elect not to pursue frivolous motions or demand certain documents. And certainly, it is well within the range of reasonable performance for an attorney to not bend to a client's views on legal issues. See Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (attorney has authority to manage most aspects of the defense without obtaining his client's approval).

Thus, Gent's trial-strategy claims challenge the very type of decisions that a court is ill-suited to second-guess. See Sheehan v. United States, 16-CV-6385, 2018 WL 1796548, at *2 (E.D.N.Y. Apr. 16, 2018) ("Second guessing the tactical and strategic choices made by counsel is seldom appropriate.") And they are the types of claims the Strickland court warned about: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Gent therefore fails to

establish that these trial decisions fell below "an objective standard of reasonableness" under "prevailing professional norms" such that they were "outside the wide range of professionally competent assistance." See Strickland, 466 U.S. at 688, 690. He also fails to show that but for these decisions, the results of his trial would likely have been different. Id. at 687, 694.

Finally, Gent claims that trial counsel was ineffective because "[t]rial preparation was nonexistent . . . No discovery of the boxes of seized records allowed by [trial counsel], no depositions, no investigations of the law and securities rule and regulations leading to misunderstand [sic] of basic Uniform Commercial Code terms and rules." (Docket No. 314, ¶ 21.) This bald claim—that trial counsel was simply unprepared—finds no support whatsoever in the record. Having presided over the 11-day trial, this Court recalls trial counsel's clear defense (lack of intent), his challenges to the government's evidence, and his well-prepared cross-examinations and opening and closing arguments. Trial counsel was engaged in every aspect of this case, and his efforts demonstrated thorough investigation, sound strategy, and diligent representation that fell well within, if not above, the range of reasonableness under prevailing professional standards.[11] While Gent may be displeased with the trial results, the record reflects that trial counsel adequately investigated the case, prepared a defense, properly conducted pretrial proceedings, and executed a defense strategy. In short, he provided effective representation. See Occhione v. Carpa, 113 F. Supp. 3d 611, 629 (E.D.N.Y. 2015) ("If counsel was actively engaged . . . in various aspects of a defense, ineffective assistance is rarely found."); Caimite v. Fischer, No. 05-CV-3324, 2009 WL 236917, at *5-6 (E.D.N.Y. Feb. 2, 2009)

---

[11] The government sets forth specific examples supporting a finding that trial counsel was fully prepared for and engaged in trial, which this Court adopts as well. (See Docket No. 323, pp. 11-13.)

(trial counsel that engaged in pretrial discovery, effectively cross-examined witnesses, made cogent opening, made appropriate objections and motions during trial, and made sound closing argument found effective); <u>see also</u> <u>Sheehan</u>, 2018 WL 1796548, at *4 (finding that a "claim that counsel did not conduct a pre-trial investigation is underwhelming when juxtaposed to trial counsel's performance during the trial").

In sum, having considered Gent's ineffective-assistance-of-counsel claims individually and cumulatively, and having presided over the trial and remand proceedings, with opportunity to observe both trial counsel and appellate counsel first-hand, this Court finds that Gent has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Harrington</u>, 562 U.S. at 104 (quotations and citations omitted). His § 2255 motion must therefore be denied.

### 3. Gent has failed to show good cause for discovery.

Four months after filing his § 2255 motion, Gent requested production of the transcript from his resentencing (Docket No. 320), unspecified documents that his trial counsel allegedly obtained on November 2, 2012, and a purchase agreement that his appellate attorney allegedly failed to review. (Docket No. 321.)

Other than generally stating that "production of these items will expedite a review of the legal issues raised in my 2255 motion," Gent does not explain why production of these documents is necessary or how the documents, if produced, would impact the claims he raises in his § 2255 motion. <u>See</u> Rule 6 (b) (providing that "[a] party requesting discovery must provide reasons for the request . . . and must specify any requested

documents")  For example, Gent does not assert any claims arising out of his resentencing.[12]  As far as this Court can tell, Gent seeks these documents to once again improperly attack the sufficiency of the trial evidence.  See Docket No. 321, p. 2 (claiming that certain documents were not entered at trial and that appellate counsel "ignored legal errors of the verdict and contradiction of government case").  Because Gent is precluded from attacking the sufficiency of the evidence under the mandate rule, his request for production of these documents to do so will be denied.

**4. No evidentiary hearing is required.**

In both his § 2255 motion and by separate motion (Docket No. 327), Gent requests the opportunity to advance his claims at an evidentiary hearing.  As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because Gent's motion and the record conclusively demonstrate that Gent is entitled to no relief under § 2255.  Moreover, Gent seeks a hearing for the principal purpose of once again attacking the sufficiency of the evidence.  In his papers, Gent identifies six reasons to hold a hearing, each of which

---

[12] Gent, through counsel, previously sought a court-ordered transcript of his resentencing for use in his collateral immigration proceedings.  (Docket No. 301.)  This Court denied Gent's request because he failed to demonstrate an entitlement to having the court order (and pay for) the transcript for that purpose.  (Docket No. 304.)  Since the filing of that motion, the court reporter prepared and filed the resentencing transcript. (Docket No. 320.)  Because the transcript has been prepared and filed, and because this Court is aware that Gent needs the transcript for use in his imminent immigration proceedings, see Docket No. 327, this Court will, as an accommodation, direct the Clerk of Court to send Gent a copy of the resentencing transcript together with this Decision and Order.

pertains to his barred efforts to attack the trial evidence and proceedings. (Docket No. 325, p. 7.) For example, Gent seeks a hearing to explore the government's failure to explain certain documents at trial, to correct allegedly false claims made at trial, and to expose misleading trial testimony. (Id.) Consequently, this Court finds that no hearing is warranted or required. See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**5. A certificate of appealability will not issue.**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Gent must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Gent has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Gent's Motion to Vacate, Set Aside or Correct his Sentence is denied. If he wishes to appeal, Gent must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in

accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 314) is DENIED.

FURTHER, that Petitioner's Motion for Transcripts and Other Documents (Docket No. 321) is DENIED.

FURTHER, that Petitioner's Motion to Proceed in this Court *In Forma Pauperis* (Docket No. 326) is DENIED.

FURTHER, that Petitioner's Motion for an Evidentiary Hearing (Docket No. 327) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to send Petitioner a copy of the resentencing transcript (Docket No. 320), together with a copy of this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE 17-CV-269S.

SO ORDERED.


Dated:      May 8, 2018
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge